Lois M. WASHINGTON,
Appellant/Cross-Appellee,

v.

The KROGER COMPANY,
Appellee/Cross-Appellant.

Nos. 81–1360, 81–1402.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1981.

Decided Feb. 10, 1982.

See also D.C. 512 F.Supp. 67.

Michael F. Delaney, argued, Terry L. Karnaze, Kansas City, Mo., for appellee/cross-appellant Kroger Co.; Spencer, Fane, Britt & Browne, Kansas City, Mo., of counsel.

Samuel I. McHenry, argued, Kansas City, Mo., for appellant/cross-appellee.

Before HENLEY and ARNOLD, Circuit Judges, and NICHOL,* Senior District Judge.

ARNOLD, Circuit Judge.

Plaintiff Lois M. Washington brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.,[1] against the Kroger Company, alleging discrimination based on race and sex in the payment of wages, reduction in work hours, denial of training and, finally, in termination of her employment. Mrs. Washington also brought suit against the Retail Store Employees Union, Local 782, AFL–CIO, claiming discrimination based on race in the union's processing of her grievance. The District Court[2] found that Kroger's testing requirement for plaintiff's entry into a training course for a checker/clerk position was a mere pretext for a legally impermissible motive. The Court then held that Kroger had discriminated against Washington because of her race and sex and awarded back pay and attorneys' fees. The complaint against the union was dismissed.

Mrs. Washington appeals the lower court's award of damages and attorneys' fees as inadequate.[3] Kroger, on the other hand, appeals the District Court's ultimate finding of racial and sex discrimination. After a careful review of the entire transcript of the trial and the documentary exhibits received into evidence, we vacate and remand for further proceedings.

---

* The Hon. Fred J. Nichol, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Claims brought pursuant to 42 U.S.C. § 1981 and 29 U.S.C. § 141 et seq. were voluntarily dismissed prior to trial.

2. The Hon. Scott O. Wright, United States District Judge for the Western District of Missouri. The District Court's opinions are reported at 506 F.Supp. 1158 and 512 F.Supp. 67.

3. Plaintiff does not appeal the District Court's dismissal of her claim against the union.

## I.

On September 12, 1969, Mrs. Washington filed an application for employment with the Missouri Division of Employment Security. Plaintiff, a black woman, was certified by the Division as eligible to participate in a program sponsored by the United States Department of Labor by which the economically disadvantaged were helped to get jobs. Under the program, employers who entered into a contract with the government received a subsidy which partially reimbursed the employer for the cost of the employee's salary. The subsidy normally was paid only during the employee's first year of employment.

The state employment agency referred plaintiff to the employment office of the Kroger Company, where she filled out an application and took a test entitled "Test for Retail Store Aptitude–Form W (for women)."[4] Job applicants were initially given only the mathematics[5] section of the aptitude test, and the other parts of the test would not be given unless the applicant made a satisfactory score on the mathematics section. Mrs. Washington achieved a score of 17 out of a possible 40 on that portion of the test. Kroger considered 27 to be the minimum score for attaining a "satisfactory" rating.

Although plaintiff did not meet Kroger's minimum requirements for employment, she was nevertheless hired for a position classified as checker/clerk as part of Kroger's participation in the federally subsidized employment program. Kroger had agreed to employ certain disadvantaged persons, such as plaintiff, who could not otherwise meet its minimum employment requirements.

Plaintiff began working for Kroger on October 13, 1969, at its Truman Road store in Kansas City, Missouri. She was the store's only black employee, and only four per cent. of Kroger's employees in the Kansas City area were black. Though hired as a checker/clerk, plaintiff spent all of her tenure with Kroger in either the produce department or the health and beauty aid department performing work generally classified as "stocker" work.[6] Kroger assertedly had a policy of not permitting any employee to work as a checker/clerk unless that person had successfully completed a "checker training" course given by Kroger. To be eligible for checker training, however, an employee had to achieve a minimum score of 27 on the "math" section of the retail aptitude test. The score Mrs. Washington received when she originally sought employment with Kroger did not qualify her for the course. She retook the test on at least one other occasion but did not achieve a score that Kroger determined to be passing.

During her first year of employment with Kroger, Mrs. Washington worked a full forty-hour work week. After Kroger's contract with the Department of Labor ended in October, 1970, plaintiff's hours of work were reduced by sixteen hours, approximately the number of hours that had been subsidized by the government. Thereafter, her hours were periodically further reduced, so that she was working approximately twelve hours a week at the time of her termination in June, 1971.

In June, 1971, Mrs. Washington began having unexcused absences from work and was tardy on more than one occasion. She was reprimanded at least twice by the store manager for absenteeism and tardiness. When plaintiff failed to report to work on June 21, Kroger terminated her employment with the company effective June 24, 1971. Tr. 137–38.

---

4. The third part of the test, referred to by the parties as the arithmetic or mathematics portion, was the same for men and women. Only the third part of the test plays a significant role in the history of plaintiff's employment with Kroger.

5. Although the parties have consistently referred to Part III of the test as the "mathematics section," the fact is that five of the 40 questions had nothing to do with arithmetic, but were rather concerned with verbal and logical aptitude. We will discuss whether this fact is significant later in this opinion.

6. Plaintiff was paid a checker/clerk's salary, which was lower than a stocker's salary. As a new employee, the collective-bargaining agreement required that she be paid at the lower rate.

While she was still employed with Kroger, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 22, 1970. In the charge, she alleged that her wages were not equal to those of male employees doing the same work and that the store was discriminating against her because of her sex. On February 9, 1971, after her work hours had been substantially reduced, she filed a complaint of discrimination with the Kansas City, Missouri, Department of Human Relations, claiming that, because of her race, she was being treated differently from other employees. Two years after her termination from employment with Kroger, plaintiff filed a second charge of discrimination against Kroger with the EEOC, repeating some of the allegations contained in the complaint lodged with the city agency. She included the additional claim that Kroger had denied her checker training and discharged her because of her race.

The EEOC issued plaintiff a "right-to-sue" notice on January 18, 1977. She subsequently brought suit in the District Court.

The District Court found that by participating in the federally subsidized employment-assistance program, Kroger in effect agreed to waive its minimum score requirement on the retail store aptitude test and train Mrs. Washington as a checker. It also found that plaintiff had established a prima facie case of racial discrimination against Kroger in the denial of checker training, job assignments, pay, and employment hours, and in her involuntary dismissal. The court did determine that Kroger rebutted plaintiff's prima facie showing of discrimination, but concluded that Kroger's stated reasons for its actions were pretextual.

On appeal, Kroger argues that the District Court committed error in making the above findings and in denying Kroger's motion to dismiss on the ground that the court lacked jurisdiction over the cause of action.

## II.

Kroger initially contends that the District Court did not have jurisdiction over the claims raised in plaintiff's second charge of discrimination filed with the EEOC on July 6, 1973. Section 706(e) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(e), requires that an aggrieved person file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. The period is extended to 300 days if the person aggrieved has first instituted proceedings with a state or local antidiscrimination agency. Here, plaintiff's second charge of discrimination, which alleged, among other things, discrimination in her dismissal from Kroger's employ, was not filed until more than two years after she was terminated.

The District Court held that plaintiff's charge of July 6, 1973, was an amendment to the discrimination charge filed by Washington on October 22, 1970, and related back to the earlier filing date. The Court relied on EEOC regulations in effect at the time plaintiff filed her second discrimination charge with the EEOC, which provided:

A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such *amendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge will relate back to the original filing date.*

*Washington v. Kroger Co.,* 506 F.Supp. 1158, 1162 (W.D.Mo.1981) (citing 29 C.F.R. § 1601.11(b) (1973)) (emphasis supplied by the District Court).

The District Court rejected Kroger's assertion that the unlawful employment practices alleged in the second charge did not "directly relate to or grow out of" the subject matter of the original charge. It is true that the nature of the discrimination alleged in Washington's first charge and the basis for it differ somewhat from the discrimination and motive alleged in her second charge. But plaintiff's claim of denial of opportunity to perform "checker" duties appears in her original charge filed

with the EEOC,[7] reappears in the complaint filed three and a half months later with the Missouri Department of Human Relations,[8] and is also contained in the second charge of discrimination filed with the EEOC on July 6, 1973.[9] This claim alleges facts that suggest a violation of Title VII continuing at least until the date plaintiff filed her complaint with the Department of Human Relations.

■ The fact that the second complaint filed with the EEOC alleges a basis for discrimination different from that alleged in the first EEOC charge is not dispositive here, where the aggrieved person is a non-lawyer who may be unaware of the true basis for the allegedly discriminatory acts until an investigation has been made. We agree with the District Court that procedural requirements should not be applied with an unrealistic or technical stringency to proceedings initiated by uncounselled complainants. See *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Huston v. General Motors Corp.*, 477 F.2d 1003 (8th Cir. 1973).

When plaintiff did file a second charge of discrimination with the EEOC, it was properly treated by the District Court as an amendment of the first charge. The second charge reiterated the claim of denial of opportunity to perform "checker" duties and also alleged discrimination in discharge which arguably grew out of Kroger's refusal to assign plaintiff to a checker/clerk position. Had the EEOC investigated plaintiff's first charge, it is reasonable to suppose that it would have uncovered the related incidents that underlay the second charge.

The District Court properly held that it had jurisdiction over plaintiff's cause of action.

### III.

The District Court found that the reason given by Kroger for not training plaintiff as a checker—her failure to attain a grade of 27 on the "math" test—was merely a pretext. This finding is the crux of the case, so far as the question of liability is concerned. We have no doubt that plaintiff made out a prima facie case, and that Kroger articulated a legitimate, nondiscriminatory reason for its actions. The only element of a prima facie case that might be questioned is whether plaintiff was qualified to be a checker/clerk, but that question resolves itself into her asserted failure to pass the test, since but for that defect she was clearly qualified and, indeed, was actually hired as a checker, though she never performed the duties of that position. Plaintiff's complaints of lack of training, reduction in hours, and unequal pay are all related to Kroger's insistence that successful completion of the test was an invariable condition precedent to training for the checker's job. Even her discharge, though the immediate occasion for it was undoubted instances of absenteeism, stemmed in the end from her exclusion from checker training classes. If plaintiff had been given the training she claims she was entitled to, the reduction in hours that ultimately led to her termination might never have occurred. If the failure to train plaintiff was unlawful, and if that failure was the cause of plaintiff's ultimate termination, the whole case must stand or fall on whether the reason given by the company for not training plaintiff was the real reason.

■ We start with the proposition that on the issue of pretext, as on the whole case, the plaintiff has the burden of persuading the trier of fact by the preponder-

---

**7.** In her original charge of October 22, 1970, plaintiff stated: "I was hired as a checker but my manager told me I was to train a little while as a produce helper. And I'm still working in the produce room on checker wages."

**8.** Plaintiff stated in her complaint of February 9, 1971, the following: "I was hired through Missouri Employment and after Kroger's had me take several tests, I was told I would be trained as a checker. Since being hired, I . . .

have done everything but learn to be a checker . . . .

"I'm the only Black employee at the store and have never been given a promotion or an opportunity to be a checker."

**9.** In plaintiff's second charge, she claimed, among other things, that: "The employer failed to place me in a checker/clerk job because I am a Negro."

ance of the evidence.[10] We are mindful also that the trier of fact is peculiarly better suited than we are to make judgments about motive and intent, which are the ultimate issues in this kind of case. In this spirit we approach the record in this case, mindful also of our duty to test the District Court's findings against the written record and to reverse any judgment that depends on findings that are clearly erroneous.

■ Kroger focuses its attack on the District Court's conclusion of law that "in employing plaintiff for the position of checker pursuant to the federally subsidized employment program, Kroger effectively waived its requirement that plaintiff attain a minimum score of twenty-seven (27) in order to qualify for checker training." 506 F.Supp. at 1168. We have diligently searched the record and can find no evidence that Kroger ever allowed anyone to be trained as a checker, much less act as one, who had not passed at least the third portion of the test. Nor is there any evidence that the government contract itself (now lost) provided that Kroger would have to give checker training despite failure to pass the test. The District Court thought it significant that the test was not shown by Kroger to be job-related; that is, there was no proof that the attainment of a score of 27, or any other particular score, had any relationship to efficient performance as a checker. The problem with this analysis is two-fold: first, the test was not shown by plaintiff to have had a disparate impact on any class of persons; and second, the ability to add, subtract, multiply, and divide is, as a matter of common sense, necessarily related to the ability to run a manual cash register. The machines used by Kroger's checkers in 1970 and 1971 were not so fully automated and computerized as the machines that grocery shoppers are accustomed to seeing today. Checkers had to figure prices for items that were, say, three for 11¢. Scales

were not connected to the cash registers, and multiple-price items had to be computed in one's head. It is true, as we have noted above, that five questions of the 40 were verbal, not mathematical, but plaintiff got four of these five right. All of her mistakes but one were on the arithmetic questions. Her failure to obtain checker training was directly related to what defendant claimed to be her mathematical deficiency.

■ The District Court pointed to a few other bits of evidence in the course of explaining its finding of pretext. Roy Gibson, the store manager, made obscene racial jokes in plaintiff's presence. This fact, which can be probative in some situations, cannot be condoned. This kind of conduct is, at best, seriously discourteous. But here the record simply leaves no substantial room for doubting that Mr. Gibson's jokes had nothing to do with plaintiff's failure to receive checker training. It may also seem unfair for Kroger to deny training on the basis of failure to pass a test. The test, one might think, should logically follow training, not precede it. But Title VII does not impose a general rule of "fairness" on employers. It proscribes only discrimination for certain stated prohibited reasons, including race and sex. After reading the transcript, we are left with the lingering impression that Kroger was inconsiderate and perhaps unfair to plaintiff. That is not enough, standing alone, to justify an inference of racial or sex discrimination. On the whole, our conviction that the test was Kroger's true reason for the denial of checker training, not just a pretext, remains definite and firm.

We do not simply reverse the judgment and remand for dismissal of the complaint, however, because we are not at all sure that plaintiff failed the test. Kroger gave her a score of 24 on the examination given on

---

**10.** Relying on our opinion in *Vaughn v. Westinghouse Electric Corp.*, 620 F.2d 655 (8th Cir. 1980), *vacated,* 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981), the District Court applied an improper burden of proof and required Kroger to show by a preponderance of the evidence that a legitimate reason for its employment action existed factually. As we now

know from *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), "the defendant bears only the burden of explaining clearly the non-discriminatory reasons for its actions." 450 U.S. at 260, 101 S.Ct. at 1097. Since the District Court ultimately found pretext, this error is not significant.

March 15, 1971, and both the District Court and the parties seem to believe that this score was correct. We have independently examined the documentary exhibit, PX 8, which is of course equally as accessible and intelligible to us as it was to the trier of fact, and we think plaintiff's true score was 29. Plaintiff's answers to five of the questions were wrongly marked incorrect. The following are the five particular questions and plaintiff's answers:

1. What would the customer pay for 1 item priced at 3 for 11¢? . . . . . . . . . . . . . . 4

(Do not have a fraction in your answer.)

9. What would the customer pay for 1⅛ lbs. at 63¢ per lb.? . . . . . . . . . . . . . . . . . 71

15. What would the customer pay for 5 items priced at 6 for 23?. . . . . . . . . . . . . . . 20

20. What would the customer pay for ⅔ lb. at 29¢ per lb.? . . . . . . . . . . . . . . . . . 20

28. A grocer bought 100 quarts of oysters for $60.00. How much per pint would he have to charge to make a profit of $10.00? 35¢

The instructions state that the arithmetic questions are figured to the next highest even penny. The lack of a "cent" sign in some of plaintiff's answers is not significant, since the monetary denomination is implicit in the question. Also in question 15, the "cent" sign has been omitted by the preparer of the test.

It seems, therefore, that plaintiff actually did pass the test. We cannot affirm the judgment in her favor on that theory, however, because there was testimony, denied by her, that an assistant manager helped plaintiff on the test. The District Court did not explicitly state which witness it believed on this point, and of course we cannot make this decision on a bare written record. The proper course is to remand for further findings on whether plaintiff took the test by herself or got illicit help. If the District Court finds that plaintiff was improperly helped by Mr. Mann, the assistant manager, the complaint should be dismissed. If it finds that she was not helped, new findings as to pretext should be entered, leading, if the District Court thinks proper after hearing whatever arguments the parties wish to offer, to reinstatement of the judgment in plaintiff's favor.

### IV.

Both sides present questions about the proper scope of relief. In view of our remand for further proceedings on the issue of liability, these questions may be moot. But if the judgment for plaintiff is reinstated, they will recur. They have been fully briefed and argued. To save time, and to provide guidance to the parties and the District Court, we will proceed to decide them, in the hope of making a possible second appeal unnecessary.

### A.

Kroger challenges on appeal two aspects of the relief granted by the trial court: the award of prejudgment interest on the back pay found due the plaintiff, and the award of attorneys' fees for time spent in asserting plaintiff's claims against the union codefendant.

1. As to prejudgment interest, we cannot say that the District Court abused its discretion. The grant or denial of this kind of relief is normally within the discretion of the district courts. Defendant complains that plaintiff's own delay is responsible for the passage of almost 11 years between the filing of her initial charge with the EEOC and the entry of judgment in the District Court. Most of the responsibility for the delay, we think, can be laid at the door of the EEOC, not either of the parties. Plaintiff did not get her right-to-sue letter until 1977, seven years after filing her original charge. She thereafter diligently prosecuted her case in court. She could have accelerated the process by demanding a right-to-sue letter, but we are unwilling to hold that she was bound to do so. It was not unreasonable for her to wait until the administrative process ordained by Congress had run its course before invoking the aid of the courts. The interest rate allowed—eight per cent.—is hardly compensable in current market conditions. The defendant is, by hypothesis, the wrongdoer, and has had the use of plaintiff's money for years. We approve the award of prejudgment interest. Compare *Di Salvo v. Cham-*

*ber of Commerce of Greater Kansas City*, 568 F.2d 593, 599 (8th Cir. 1978).

■ 2. Some of plaintiff's counsel's time was spent on her unsuccessful claim against the union co-defendant. Kroger objects to having to pay for that time. The objection has logical merit in the abstract. The District Court found, however, that "as a practical matter, it does not appear that counsel for plaintiff were compensated for any time spent exclusively on plaintiff's claim against the Union." 512 F.Supp. at 69. Apparently "any work directed *solely* at the defendant Union was both minimal and practically impossible to remove from the major preparation directed at proving plaintiff's case against Kroger." 512 F.Supp. at 68 (quoting argument of plaintiff's counsel with approval). In these circumstances we see no abuse of discretion. The district courts are in a better position than we are, with respect to services of counsel rendered before them, to allocate time as between losing and winning defendants. If the time could be reliably separated, it would certainly be within the district courts' discretion to do so. Here, we accept Judge Wright's judgment that separation was not practicable.

### B.

Plaintiff cross-appeals, claiming that the District Court erred in holding that she was not entitled to back pay for the time when she was a full-time college student, and in refusing to allow an additional attorney's fee for time spent in connection with post-judgment motions.

■ 1. The District Court fixed the amount of back pay at $13,981.48. Plaintiff was a full-time college student between January 1, 1973, and December 31, 1975, during which time she would have earned, had she been a full-time employee at Kroger, $35,074.40. In support of the trial court's decision not to include this sum as part of the back-pay award, defendant cites *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 268 (10th Cir. 1975):

> When an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a backpay award for the period while attending school ... would be like receiving a double benefit. We fail to see that the district court abused its discretion in not including the time Taylor was attending school in the computation of the backpay award.

While this approach makes sense as a general rule, we need not hold in this case that back pay either does or does not continue to run in every case of a plaintiff who has chosen to go to school full-time. Here, the District Court evidently felt that plaintiff had effectively removed herself from the employment market. Some full-time students, those who attend classes at night, for example, are also full-time employees, but there is no evidence, at least none sufficient to persuade us to reject the trial court's finding, that Mrs. Washington could have held a full-time job without curtailing her schooling. She did continue to seek employment, and actually earned some money while attending school, but the District Court excluded these earnings from the outside earnings offset against her back-pay award. In the circumstances of this case, this resolution of the issue was fair.

■ 2. In its initial opinion the District Court considered the relevant factors in assessing attorneys' fees and costs, see *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and computed with exemplary clarity the amount of fees it thought appropriate. A fee of $9,740 was awarded. Both sides filed post-judgment motions for modification. The plaintiff prevailed on one of the two issues raised in her post-judgment motion, and also successfully opposed the defendant's motion, which the District Court denied. Counsel for plaintiff sought an additional $1,644 for the time expended in these supplementary proceedings. The District Court denied this request, and plaintiff claims an abuse of discretion.

Had we been sitting on the trial court, we might well have allowed an additional fee. On the other hand, the issue on which plaintiff did not prevail, post-trial, the question of allowable back pay during plaintiff's attendance at college, involved a great deal more money than the issues on which she

did prevail. Time expended is only one factor to be considered, though it may be the most important single consideration. The District Court was entitled to believe that, considering the case as a whole, plaintiff's counsel had been fairly compensated. The fee claimed for post-judgment work was relatively small as compared with the fee already allowed, anyway. The District Court's action was not so far out of bounds as to be an abuse of discretion.

The judgment is vacated and remanded for further proceedings in accordance with this opinion. The discussion in Part IV of this opinion is, as we have said, provisional only, and will take effect only if, on remand, the judgment for plaintiff is reinstated. Each party will bear her or its costs on this appeal. As plaintiff has not yet prevailed, no fee will be awarded at this time for the services of her lawyer on this appeal.

It is so ordered.