**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**STONE CONTAINER CORPORATION, Defendant.**

No. 81–0477–CV–W–1.

United States District Court,
W. D. Missouri, W. D.

Oct. 1, 1982.

C. Felix Miller, E. E. O. C., St. Louis, Mo., for plaintiff.

James H. Ottman, Shook, Hardy & Bacon, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.

JOHN W. OLIVER, Senior District Judge.

This is a Title VII case. At the pretrial conference convened July 2, 1982 the parties presented a standard pretrial order in which they stipulated only 14 facts which both sides admitted and required no proof. Proceedings at the pretrial conference established that many more facts were undisputed and that, given appropriate time, the parties could increase the number of facts subject to agreement.

Thereafter, in a most commendable manner, the number of stipulated facts was increased to 92 and the parties agreed that five other facts, although not admitted, would not be contested at trial by any evidence to the contrary.

In addition, both sides complied with the requirements of Standard Pretrial Order No. 4 in the same commendable manner, with the result that the vast majority of proposed findings of fact were based upon particular paragraphs of the expanded stipulation of facts included in Standard Pretrial Order No. 2.

The Court requested counsel to indicate on a copy of opposing counsel's proposed findings of fact a notation which would indicate whether particular paragraphs in opposing counsel's proposed findings of fact were admitted in whole or in part or denied. Counsel complied with the Court's direction in exemplary manner with the result that defendant denied only 12 of the 134 findings of fact proposed by the plaintiff. The plaintiff denied only nine of 38 findings proposed by the defendant.

The parties agreed in part VI of Standard Pretrial Order No. 2, under which the case was tried, that the principal issues of fact which remain to be litigated at trial related to (A) whether the Company failed to hire Ms. McBroom because of her sex (female) and (B) whether the Company had as its basis for refusing to hire Ms. McBroom a legitimate non-discriminatory reason that was not a pretext for discriminating against Ms. McBroom because of her sex (female)." All of the findings proposed by both sides focus on those disputed questions.

Defendant's position on the facts is revealed by defendant's proposed findings of fact No. 37 and No. 38 which proposed that the Court find the following:

37. The primary reason for Stone Container Corp.'s refusal to hire Ms. McBroom was her termination from Southwest Forest Industries for excessive absenteeism and her failure to fully reveal that on her application form.

38. Additional reasons for Stone Container Corp.'s refusal to hire Ms. McBroom were her willingness to quit her present employment without notice, her close relationship to a current employee, her indication of willingness to work only the second shift, and her lack of significant relevant experience.

Defendant seeks to support those two ultimate findings of fact by proposing that the Court also find that it was the policy of defendant to make telephone reference checks on prospective General Help employees to verify dates of employment and reasons for termination of employment (Defendant's proposed finding of fact No. 17); that after a second telephone call from plaintiff, Mrs. Graham, defendant's personnel clerk, did in fact check Ms. McBroom's previous employment by making a telephone call to Ms. McBroom's former employer, Southwest Forest Industries, and that Mrs. Graham was advised by Southwest Forest Industries that although Ms. McBroom had listed her reason for leaving

Southwest Forest Industries employment as "foreman problems," Ms. McBroom had actually been terminated for absenteeism (Defendant's proposed finding of fact No. 27).

Mrs. Graham also testified that she would not have hired Ms. McBroom at the time of her application regardless of her sex because Ms. McBroom's application showed on its face that she was willing to quit her present employment without notice, that she had indicated a willingness only to work the shifts checked on her application, and because she lacked significant relevant experience.

■ The detailed findings of fact made in the next part of this memorandum opinion will reflect our acceptance of the testimony of persons employed at Southwest Forest Industries at the relevant times involved in this case and that defendant did not carry the burden of establishing that Ms. McBroom had been discharged by Southwest Forest Industries for absenteeism, rather than because of "foreman problems," as her application stated. Our detailed findings also reflect our specific findings that the other reasons assigned by the defendant for its refusal to hire Ms. McBroom were pretextual and untrue.

Application of the controlling case law cited in Part III of our memorandum opinion requires that judgment be rendered for plaintiff and that it include an award in favor of Ms. McBroom in accordance with the amounts which the parties stipulated would be due in the event it was adjudged that the plaintiff should prevail on the issue of liability.

In Part II to follow we shall make additional findings of fact based upon the stipulation of the parties and our determination of the few remaining disputed questions of fact which were litigated.

## II. *Findings of Fact*

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1343 and 1345. This is an action authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

2. The practices alleged in the complaint to be unlawful employment practices were committed within the State of Missouri and the Western District of Missouri, Western Division.

3. Plaintiff Equal Employment Opportunity Commission (hereinafter "the Commission") is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e, *et seq.*

4. Defendant Stone Container Corporation (hereinafter "the Company") is a Missouri corporation with a manufacturing plant in Liberty, Missouri, where it is engaged in the manufacture, sale and distribution of corrugated containers which are sold and shipped in interstate commerce.

5. At all times relevant to this lawsuit, the Company has employed more than fifteen employees and has been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

6. Cindy McBroom, whose sex is female, applied for a position as General Help with the Company on October 29, 1979.

7. The Company did not hire Ms. McBroom for any position.

8. On December 6, 1979 Ms. McBroom filed with the Commission a charge of discrimination alleging that the Company did not hire her because of her sex.

9. On December 6, 1979 the Commission referred Ms. McBroom's charge to the Missouri Commission on Human Rights, which waived jurisdiction on December 11, 1979.

10. On December 13, 1979 the Company received from the Commission notice of and a copy of the charge of discrimination filed by Ms. McBroom, together with a questionnaire, seeking information regarding the charge.

11. On January 18, 1980, the Commission received from the Company, *inter alia:* (1) the application for employment of Ms.

McBroom; (2) all applications of persons hired by the Company between October 11, 1979 and December 4, 1979; (3) all applications between October 9, 1979 and November 30, 1979 of persons rejected; and (4) a description of the Company's hiring procedures in effect during that period.

12. On August 25, 1980 the Commission issued its Determination concerning Ms. McBroom's charge.

13. Thereafter, the Commission made sufficient conciliation efforts to vest it with jurisdiction to bring this action.

14. Mrs. Joan Graham has been the personnel clerk for Stone Container Corporation since sometime between December, 1978 and June, 1979, continuously to the present.

15. Mrs. Graham's duties as a personnel clerk include:
   A. Screening applicants for General Help employment.
   B. Making hiring decisions for General Help employment as needed by Stone Container Corporation.
   C. Checking references on applicants for General Help employment if reference checks are made.
   D. Receiving instructions from the Plant Manager or Superintendent as to how many General Help employees need to be hired.

16. Cindy L. McBroom applied for employment with Stone Container Corporation on October 29, 1979 for the position of General Help.

17. Cindy L. McBroom was employed at Southwest Forest Industries from June 27, 1978 to January 18, 1979. Southwest Forest Industries is a company engaged in the same industry as defendant, to-wit: corrugated box board manufacture, and with very similar employment requirements as defendant.

18. During the course of her employment with Southwest Forest Industries, Cindy L. McBroom learned to operate and become proficient in the operation of the following machines, all of which may be operated by persons employed by defendant as General Help: Taper, Curtain Coater and Stitcher.

19. During the course of her employment with Southwest Forest Industries, Ms. McBroom assisted in operating machines which are used by defendant in the manufacture of corrugated boxes.

20. Ms. McBroom has never been offered employment by Stone Container Corporation.

21. Goble R. Davis is a male who applied for employment with Stone Container Corporation on October 31, 1979 and was hired for the position of General Help on November 1, 1979.

22. Howard W. Taylor is a male who applied for employment with Stone Container Corporation on October 11, 1979 and was hired for the position of General Help on November 16, 1979.

23. The application of Howard Taylor lists no prior experience with a corrugated box manufacturer and does not affirmatively indicate that a reference check was made with any of Mr. Taylor's prior employers.

24. Dennis D. Lehman is a male who applied for employment with Stone Container Corporation on November 20, 1979 and was hired for the position of General Help on November 29, 1979.

25. Dennis D. Lehman's application lists no prior experience with a corrugated box manufacturer and his employment application does not affirmatively indicate that a reference check was made with Mr. Lehman's prior employers.

26. DeWayne C. Braley is a male who applied for employment with Stone Container Corporation on October 22, 1979 and was hired for the position of General Help on October 30, 1979.

27. DeWayne C. Braley had no prior experience with a corrugated box manufacturer nor with any of the following machines: Taper, Curtain Coater, Bobst, S & S, Koppers, Corrugator, and Stitcher.

28. Don A. Sloan is a male who applied for employment with Stone Container Corporation on October 19, 1979 and was hired

for the position of General Help on November 15, 1979.

29. Don A. Sloan had no prior experience with a corrugated box manufacturer nor with any of the following machines: Taper, Curtain Coater, Bobst, S & S, Koppers, Corrugator, and Stitcher.

30. The employment application of Mr. Sloan does not affirmatively indicate that a reference check was made with any of Mr. Sloan's prior employers.

31. Randy L. Braman is a male who applied for employment with Stone Container Corporation on December 3, 1979 and was hired for the position of General Help on December 4, 1979.

32. Randy L. Braman had no prior experience with a corrugated box manufacturer nor with any of the following machines: Taper, Curtain Coater, Bobst, S & S, Koppers, Corrugator, and Stitcher.

33. Mr. Braman applied for employment, was immediately interviewed and offered employment at the conclusion of that interview, contingent upon his passing Stone's physical examination.

34. The employment application of Mr. Braman does not indicate that a reference check was made with any of Mr. Braman's prior employers.

35. Bill J. Vincent, Martin J. Baley, Martin L. Summers, Larry E. Donaldson and Johnnie F. Collins are all males who applied for employment with Stone Container Corporation between September 18, 1979 and August 25, 1980 and were hired for the position of General Help. None of their applications lists prior experience with a corrugated box manufacturer nor any familiarity with any of the following machines: Taper, Curtain Coater, Bobst, S & S, Koppers, Corrugator, and Stitcher.

36. The large majority of all new employees hired by Stone Container Corporation as General Help have no prior experience with a corrugated container manufacturer nor with the machines used in the manufacture of corrugated containers.

37. Prior experience with a corrugated container manufacturer and/or familiarity with such machines as a Corrugator, Stitcher, and/or Taper makes a person better qualified for the position of General Help at Stone Container than a person without such experience or familiarity.

38. Prior experience with a corrugated container manufacturer and/or familiarity with machines such as a Corrugator, Stitcher, and/or Taper machine were factors relied upon favorably by Joan Graham in deciding to hire applicants for General Help at Stone Container.

39. No special skill, training, or experience is necessary in order for an applicant to be hired by Stone Container as General Help.

40. Robert Ramirez is a male who applied for employment with Stone Container Corporation on October 9, 1979 and was hired for the position of General Help on October 11, 1979.

41. On October 6, 1978 Robert Ramirez was discharged for absenteeism and tardiness from his job at Southwest Forest Industries.

42. John S. Mallon is a male who applied for employment with Stone Container Corporation on January 10, 1978 and subsequently was hired for the position of General Help.

43. John S. Mallon was discharged for absenteeism and tardiness from his job at Southwest Forest Industries.

44. John S. Mallon's application for employment with Stone Container indicated that he was fired by his previous employer, Southwest Forest Industries.

45. Terry A. Barker is a male who applied for employment with Stone Container Corporation on October 9, 1979 and was hired for the position of General Help on October 11, 1979.

46. Terry A. Barker was disciplined while employed by Southwest Forest Industries for excessive absenteeism on December 6, 1978 by a written warning, on January 17, 1979 by a written warning and on April 4, 1974 by a five day suspension.

47. Terry A. Barker was absent from work a total of thirty-four days from September 6, 1978 to April 16, 1979 while employed by Southwest Forest Industries.

48. Lloyd D. Collins is a male who applied for employment with Stone Container Corporation on January 27, 1978 and subsequently was hired for the position of General Help.

49. Lloyd D. Collins was absent from work a total of twelve days from January 1, 1977 to April 17, 1977, the last day of Mr. Collins' employment, while employed by Southwest Forest Industries.

50. Cindy L. McBroom was discharged for excessive absenteeism by Southwest Forest Industries after missing a total of fourteen days of work from June 27, 1978 to January 17, 1979.

51. The employment applications for employment with Stone Container Corporation filed by Charles Braughton, James Beadle, Robert M. Lane, Robert Rummans, Richard P. Neff, Donald L. Hite, Jr., Ricky Baker, Robert Bears, Larry Frazee, Edward T. Goligoski, Don A. Sloan, DeWayne Braley, Charles D. Garcia, Martin W. Rick, Dale W. Dallas, Lloyd Collins, and David A. Dyer indicate the applicant left one or both of his preceding two jobs because of discharge or because of problems with management. All these applicants are male and were hired by defendant for the position of General Help at some time between January 10, 1978 and November 18, 1980.

52. Defendant did not refuse to hire Cindy L. McBroom because she was discharged for absenteeism by Southwest Forest Industries and defendant's assertion that this was a reason for refusing to hire Cindy L. McBroom is pretextual and untrue.

53. Defendant did not refuse to hire Cindy L. McBroom because she stated in her employment application that she left the employment of Southwest Forest Industries because of "foreman problems" when she had been discharged for absenteeism and defendant's assertion that this was a reason for refusing to hire Cindy L. McBroom is pretextual and untrue.

54. Cindy McBroom marked on her employment application that she would work the second and third shifts at Stone Container Corporation. She did not mark that she would work the first shift.

55. James A. Beadle is a male who applied for employment with Stone Container Corporation on October 23, 1978 and was hired as General Help on October 26, 1978.

56. James A. Beadle marked on his employment application that he would work the second and third shifts at Stone Container Corporation. He did not mark that he would work the first shift.

57. John A. Storey is a male who applied for employment with Stone Container Corporation on September 4, 1979 and was hired as General Help on September 14, 1979.

58. John A. Storey marked on his employment application that he would work the second and third shifts at Stone Container Corporation. He did not mark that he would work the first shift.

59. Howard W. Taylor marked on his employment application that he would work the second and third shifts at Stone Container Corporation. He did not mark that he would work the first shift.

60. Mike J. McCoy, Dale Reaves, Bill Vincent, Tracey D. Hickman, James D. Snow and Kent L. Houston are men who applied between October 23, 1978 and December 31, 1979 and were hired for the position of General Help by Stone Container. On each of the applications filed by these men either the first or second shift was not marked.

61. The practice of Stone Container Corporation from October, 1979 continuously to the present is to start all plant hourly employees on the second or third shift, except summer help.

62. New hires of Stone Container were never assigned to fill a vacancy on the first shift as all such vacancies are filled by currently employed workers, except summer help.

63. The first shift is commonly viewed as the best shift to work by employees of Stone Container.

64. Vacancies on the first shift (and all shifts) are filled by a job bid system, whereby the most senior qualified employee who bids on a job is awarded the job.

65. After May 1, 1980 defendant did not inquire on its employment applications which shifts applicants would work.

66. Defendant did not refuse to hire Cindy L. McBroom because she did not mark on her employment application that she would work the first shift, and defendant's assertion that this was a reason for refusing to hire Cindy L. McBroom is pretextual and untrue.

67. James Williams is a male who applied for employment with Stone Container Corporation on August 28, 1979 and was hired for the position of General Help.

68. Mr. Williams indicated on his employment application that he was currently employed and that he could start to work on the day he applied for employment.

69. William R. Barker is a male who applied for employment with Stone Container Corporation on September 5, 1979 and was hired for the position of General Help on September 6, 1979.

70. Mr. W. Barker indicated on his employment application that he was currently employed and that he could start to work on the day he applied for employment.

71. Robert Ramirez indicated on his employment application that he was currently employed and that he could start to work on the day he applied for employment.

72. Terry D. Palmer is a male who applied for employment with Stone Container Corporation on October 15, 1979 and subsequently was hired for the position of General Help.

73. Mr. Palmer indicated on his employment application that he was currently employed and that he could start to work on the day he applied for employment.

74. James E. Berten is a male who applied for employment with Stone Container Corporation on October 22, 1979 and was hired for the position of General Help on October 23, 1979.

75. Mr. Berten indicated on his employment application that he was currently employed and that he could start to work on the day he applied for employment.

76. Randy L. Mueller, Keith Anderson, Ross A. Breeze, Paul C. Gould, Kevin F. Pritchard, Cecil Winfrey, and Robert Bears are men who applied for employment between October 5, 1978 and December 31, 1979 and were hired for the position of General Help. Each of their applications indicated they were currently employed and that they could start to work either day of their application or the day after their application.

77. Defendant did not refuse to hire Cindy L. McBroom because she indicated on her employment application that she was currently employed and that she was able to work immediately and defendant's assertion that this was a reason for refusing to hire Cindy L. McBroom is pretextual and untrue.

78. At all times relevant, defendant has not had a written policy forbidding the employment with the same department of close relatives or of husband and wife.

79. Cindy L. McBroom was unmarried at the time of her employment application at Stone Container Corporation.

80. Defendant has never had a policy forbidding the employment of roommates or of persons living together at the same address.

81. Ricky L. Lehew is a male who applied for employment with Stone Container on August 21, 1974 and was hired on August 26, 1974 as a miscellaneous operator.

82. At the time of Ricky Lehew's hire, Sue Lehew, who is his relative, was employed in the same department to which Ricky Lehew was assigned to work.

83. Curtis G. Lehew is a male who applied for employment with Stone Container on February 21, 1977 and was hired on that day as General Help.

84. At the time of Curtis Lehew's hire, Sue Lehew, who is his relative, and Ricky L. Lehew, who is his brother, were employed in the same department to which Curtis Lehew was assigned to work.

85. Floyd D. Fetters is a male who applied for employment with Stone Container on July 13, 1976 and was hired on January 10, 1977 as General Help.

86. At the time of Floyd N. Fetters hire, Jim Fetters, who is his brother, was employed in the same department to which Floyd Fetters was assigned to work.

87. James K. Adams is a male who applied for employment with Stone Container Corporation on April 29, 1979 and was hired on May 21, 1979 as General Help for the summer.

88. William Adams is a male and is the brother of James K. Adams. On May 21, 1979 William Adams was hired as General Help for the summer.

89. Ed Rule has been continuously employed by Stone Container Corporation in its Production Department since August 29, 1968. He is the father of Mike Rule and Danny Rule.

90. Danny Rule has been continuously employed by Stone Container Corporation in its Production Department since June 27, 1966. He is the son of Ed Rule and brother of Mike Rule.

91. Mike Rule was rehired by Stone Container Corporation on January 5, 1981 to work as a supervisor in its Production Department.

92. Joan Graham was the Stone Container official who responded to the Equal Employment Opportunity Commission regarding the charge of sex discrimination filed by Cindy McBroom.

93. In December, 1979, during the course of the investigation of Cindy McBroom's charge, Stone Container Corporation was asked to provide to the Commission the reasons why Stone Container Corporation did not hire Cindy McBroom.

94. The only reasons stated by Stone Container Corporation, during the course of the Commission's investigation, were (a) that McBroom had marked her application as willing to work only the second and third shifts; (b) that McBroom had stated on her application that she was currently employed and that she could start work October 29, 1979, the day the application was filed; and (c) that McBroom stated in her application that her employment with Southwest Forest Industries ended because of foreman problems, when she was terminated for absenteeism.

95. Defendant did not refuse to hire Cindy L. McBroom because she was living "as husband and wife" with Robert Ramirez.

96. Joan Graham told Cindy L. McBroom that Stone Container Corporation did not like to hire women for production positions because they could not do as much as men.

97. Stone Container Corporation did not communicate its claim to the Commission that it refused to hire Cindy McBroom because of her relationship with Robert Ramirez until after this lawsuit was filed, during the course of discovery.

98. The policy and practice of Southwest Forest Industries concerning reference checks on past employees is to require written authorization on Form SWF 1040A by the past employee before releasing any information.

99. The policy and practice of Southwest Forest Industries when information has been released concerning a former employee is to place the completed SWF–1040A form in that former employee's personnel file.

100. There is no Form SWF–1040A in the personnel files of Southwest Forest Industries of Cindy McBroom, Robert Ramirez, Terry Barker, Lloyd Collins and John S. Mallon.

101. Cindy McBroom, Robert Ramirez, Terry Barker, Lloyd Collins and John S. Mallon were employed by Southwest Forest Industries before applying for employment at Stone Container Corporation.

# 1106

102. The personnel director of Southwest Forest Industries during October, November and December, 1979, Linda S. Nealy, does not remember receiving any reference checks on Cindy L. McBroom, Robert Ramirez or Terry Barker, nor did she remember any such requests when asked on or about March 6, 1980.

103. The secretary to the personnel director, Vickie Lawrence, was the only other person employed in the personnel office of Southwest Forest Industries during October, November, and December, 1979. Vickie Lawrence does not remember receiving any reference checks on Cindy L. McBroom, Robert Ramirez, or Terry Barker.

104. Southwest Forest Industries' practice was and is never to release any information about a former employee unless authorized to do so by a signed SWF–1040A form.

105. The only exception to Southwest Industries' practice regarding the release of information concerning former employees without a signed SWF–1040A form related to its willingness to verify the dates of a former employee's employment, provided the inquirer provided those dates for verification.

106. Joan Graham and Stone Container Corporation never communicated its claim to the Equal Employment Opportunity Commission that it had refused to hire Cindy L. McBroom because she was allegedly rude on the phone to Joan Graham, until after this lawsuit was filed, during the course of discovery.

107. From March 15, 1977 to December 31, 1978, 125 women and 342 men applied for employment at Stone Container Corporation seeking plant hourly production jobs. Of that total, 83 men and 7 women were hired.

108. From January 1, 1979 to August 27, 1980, 98 women and 276 men applied for employment at Stone Container Corporation seeking plant hourly production jobs. Of this total, 73 men and 2 women were hired.

109. Stone Container Corporation deliberately and willfully discriminated against Cindy McBroom by refusing to offer to her employment in the position of General Help, because of her sex, female.

110. Cindy McBroom earned approximately $368.13 during the month of November, 1979 at Captain D's Restaurant.

111. Cindy McBroom quit her job at Captain D's Restaurant on or about December 1, 1979.

112. If Cindy McBroom had remained employed during the month of December at Captain D's Restaurant, she would have earned approximately $368.13.

113. Cindy McBroom began work as a waitress at Three Little Pigs Restaurant in Kansas City, Missouri on or about January 2, 1980 and continued to work there until mid-March, 1980.

114. Cindy McBroom quit her job at Three Little Pigs to obtain higher paying employment at Safeway Stores, Incorporated.

115. During her employment at Three Little Pigs, Cindy McBroom earned approximately $1,000.00.

116. Cindy McBroom began part-time work as a delicatessen counter person for Safeway Stores, Incorporated in mid-March, 1980, and continued to work there until mid-March, 1981.

117. During calendar year 1980, Cindy McBroom earned approximately $3,925.00 working for Safeway Stores, Incorporated.

118. During calendar year 1981, Cindy McBroom earned $809.74 working for Safeway Stores, Incorporated.

119. From mid-March, 1981 until mid-August, 1981, Cindy McBroom was unemployed and received a total of $1,101.38 from the State of Missouri as Unemployment Compensation Benefits.

120. The Unemployment Compensation Benefits were based upon Cindy McBroom's employment with Shoney's Incorporated (Captain D's Restaurant), Safeway Stores, Incorporated, and Sam J. Scola (Three Little Pigs Restaurant).

121. In mid to late August, 1981, Cindy McBroom began work for Terry Carver and Matt Graham, who are Farmer's Insurance Agents.

122. Cindy McBroom worked part-time for Carver and Graham working approximately ten to fifteen hours a week and earning approximately $315.00 while so employed.

123. Cindy McBroom quit her employment with Carver and Graham after obtaining employment at Custombilt Trucks, Incorporated.

124. Cindy McBroom began work as a secretary at Custombilt Trucks, Incorporated on September 29, 1981 and has continuously been employed as a secretary there to this date.

125. During calendar year 1981, Cindy McBroom earned $1,575.00 working for Custombilt Truck, Incorporated.

126. From January 1, 1982 through July 31, 1982 Cindy McBroom earned $5,559.45 working for Custombilt Truck, Incorporated.

127. Since July 26, 1982, Cindy McBroom has worked an average of 24 hours a week for Custombilt Truck, Incorporated, with no additional hours of work being available due to lack of work.

128. Don Sloan applied for employment with Stone Container Corporation at its Liberty, Missouri plant on October 19, 1979 and was hired on November 15, 1979.

129. The gross pay of Don Sloan while working for Stone Container was $42,890.20 as of June 30, 1982.

130. Randy Braman applied for employment with Stone Container Corporation at its Liberty, Missouri plant on December 3, 1979 and was hired on December 4, 1979.

131. The gross pay of Randy Braman while working for Stone Container Corporation was $39,117.94 as of June 30, 1982.

132. The interest rate set by the Secretary of the Treasury of the United States of America under 26 U.S.C. § 6621 was 6% between February 1, 1978 and January 31, 1980, Rev.Rul. 77–411; 12% between February 1, 1980 and January 31, 1982, Rev.Rule 79–366; and 20% from February 1, 1982.

133. After the receipt of all evidence, the parties were requested to endeavor to stipulate the maximum amount of back pay to which Ms. McBroom would be entitled in the event the plaintiff should prevail on the issue of liability. Counsel conferred and filed the following stipulation on September 22, 1982, which we accept and incorporate in our findings:

> If the plaintiff Equal Employment Opportunity Commission prevails on the issue of liability, both parties are in agreement that the maximum monetary recovery for Cindy McBroom Ramirez as backpay—exclusive of interest—is $32,703.00. The plaintiff is also requesting interest in the amount of $7,040.00.[1]

---

1. The parties arrived at the back pay figure by subtracting the earnings of Cindy McBroom since the time of her application at Stone Container until September 30, 1982 ($14,939.00) from the actual earnings of Don Sloan, an employee at Stone Container during that same time, ($47,642.00). [The amount from June 30, 1982 to September 30, 1982 is an estimate for both individuals based on average quarterly earnings. *See* Appendix A of Plaintiff's Proposed Findings of Fact.] After stipulating to this amount, defendant filed a post-trial memorandum in which defendant argues that the back pay award should terminate for Cindy McBroom on one of two dates: (1) when she was discharged for cause from Safeway Stores in March of 1981; or (2) when she was hired at Custombilt Trucks in September of 1981. We have considered the arguments of defendant and have determined that the $32,703.00 back

pay award plus interest of $7,040.00 is reasonable.

Defendant has pointed to no facts or law that would require us to terminate the back pay award at the time Cindy McBroom was discharged from Safeway. In fact, after examining the record, we find and conclude that under the stipulation agreed to by the parties, defendant benefited from the manner their stipulation treated that discharge. Ms. McBroom's approximate quarterly earnings at Safeway were $1,215.00. Therefore, if she would have stayed at Safeway she would have earned approximately $7,290.00 in the six quarters since her discharge. Ms. McBroom's actual earnings during that period (including an estimate for the last quarter), however, were $8,445.00. Thus, it is likely that defendant would have had

### III. Conclusions of Law

1. Jurisdiction of this Court is based on 28 U.S.C. Sections 451, 1343, and 1345. This is an action authorized and instituted pursuant to Section 706(f)(1), (f)(3), and (g) of Title VII, 42 U.S.C. Section 2000e–5(f)(1), (f)(3), and (g).

2. Venue is proper.

3. All conditions precedent to the institution of this lawsuit have been fulfilled. 42 U.S.C. Section 2000e, *et seq.*

4. Cindy McBroom's charge against defendant was filed in a timely manner.

5. This action is not barred because of laches or any other equitable or legal reason.

■ 6. Defendant violated Title VII by intentionally discriminating against Cindy McBroom because of her sex, female, in hiring for plant hourly production jobs. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Furnco Construction Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

7. Cindy McBroom is entitled to back pay in the amount of her potential earnings at Stone Container Corporation had she not been denied employment because of her sex, from November 1, 1979 to the date of entry of this judgment. The amount of Cindy McBroom's actual earnings subsequent to November 1, 1979 shall be deducted from her potential earnings at Stone Container Corporation to determine the amount of back pay due. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Patterson v.*

*American Tobacco Co.,* 535 F.2d 257 (4th Cir.), *cert. denied* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *EEOC v. Enterprise Association Steamfitter Local No. 638,* 542 F.2d 579 (2nd Cir.), *cert. denied* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1976); *James v. Stockham Valve and Fitting Co.,* 559 F.2d 310 (5th Cir. 1977), *cert. denied* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918 (10th Cir. 1979); *Meadows v. Ford Motor Co.,* 510 F.2d 939 (6th Cir.), *cert. denied* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1975); *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260–61 (5th Cir. 1974).

8. Cindy McBroom is entitled to prejudgment interest at the rate determined by the Secretary of Treasury of the United States of America, pursuant to 26 U.S.C. § 6621 for the effective period of that rate. *Washington v. Kroger,* 671 F.2d 1072, 1078 (8th Cir. 1982); *Simpson v. Norwesco, Inc.,* 583 F.2d 1007, 1013–14 (8th Cir. 1978); *Aetna Casualty and Surety Co. v. United States,* 365 F.2d 997, 1006–07 (8th Cir. 1966).

9. The parties' agreement in regard to both back pay and interest is set forth in paragraph 133 of our Findings of Fact. We conclude that those figures are proper and should be included in the judgment to be entered in this case.

### IV.

For the reasons stated, it is

ORDERED that the Clerk is directed to enter, on a separate document, as provided by Rule 58 of the Federal Rules of Civil Procedure, a judgment in favor of the

---

to pay a larger award if Ms. McBroom had stayed at Safeway.

Defendant alternatively argues that the back pay award should terminate at the time Ms. McBroom acquired a job at Custombilt Trucks because her hours at that job have been reduced from a 40 hour work week and Ms. McBroom has not sought other employment. Ms. McBroom was fortunate enough to work a 40 hour work week at Custombilt Trucks from January, 1982 until sometime in the Spring of 1982. It was at some later time in the Spring

of 1982 that her hours were reduced due to lack of work. Presumably, if work had increased at Custombilt Trucks, Ms. McBroom's hours might also have increased. Claimants under Title VII must use reasonable diligence in pursuit of earnings but we do not believe this includes a requirement that claimants must seek new employment every time their work week dips below 40 hours. The standard is one of reasonableness and, under the facts of this case, the claimant has lived up to that standard.

plaintiff and against the defendant, said judgment to include a monetary recovery for Cindy McBroom Ramirez in the amount of $32,703.00 and that said judgment shall also award Cindy McBroom Ramirez pre-judgment interest amount of $7,040.00.

