Wiley JOHNSON, Jr., Plaintiff,

v.

UNITED STATES ELEVATOR
CORPORATION,
Defendant.

No. 88–2399C(6).

United States District Court,
E.D. Missouri, E.D.

Dec. 17, 1991.

Michael J. Hoare, Michael J. Hoare, P.C., St. Louis, Mo., for plaintiff.

Stephen Hoyne, Amelung, Wulff & Willenbrock, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

GUNN, District Judge.

Plaintiff, a black male, filed this Title VII action alleging unlawful racial discrimination as the basis for termination of his employment by defendant.

The following findings of fact and conclusions of law are made pursuant to Rule 52, Fed.R.Civ.P.

Defendant is in the business of installing, maintaining and repairing elevators in the St. Louis metropolitan area. Beginning in 1977 and continuing through August 1991, defendant provided such service under contract for the St. Louis Housing Authority. Plaintiff, a licensed elevator mechanic since 1980, worked as an elevator mechanic for defendant from August 1977 through January 19, 1988. Approximately 98 per cent of

plaintiff's work assignments were to service elevators operated by the St. Louis Housing Authority located throughout St. Louis and St. Louis County. Defendant terminated plaintiff from its employment on January 19, 1988, contending that a reduction in work force was made necessary by a lack of work.

Plaintiff is a member of Local 3 of the International Union of Elevator Constructors with whom defendant has a labor agreement. The union agreement provides for rates of pay and benefits for its members and also provides procedures for termination of a mechanic for cause. The agreement does not require consideration of seniority or other such factors in determining which mechanics it will terminate in the event of a layoff.

Between April 1987 and January 1988, a reduction in available work required defendant to lay off eight of its force of St. Louis mechanics. Plaintiff was the eighth mechanic to be laid off.

The decision relating to which mechanics to lay off was vested in the defendant's branch manager, Gary Schuette, who relied on his own judgment of the mechanics' skills, including his experience with them. In this regard, Mr. Schuette considered the attendance and work performance of the employees and advice from their supervisors concerning their skills and work performance. Also of significance were customer comments on the employees' work. Seniority was not a determinative factor in the layoff process.

There was evidence that plaintiff experienced certain health problems, primarily associated with his corpulence. Plaintiff weighed in excess of 360 pounds. He also had some back, ankle and knee problems throughout the years, and had worked fewer hours than other employees. The branch manager considered plaintiff his "least best" mechanic and attributed plain-

tiff's being laid off to this inferior performance, without regard to race.

There was a consistent practice among plaintiff's co-workers of referring to his race and cultural background in the grossest of pejoratives and epithets, overheard on frequent occasions without response by the branch manager. Defendant refers to those actions as only "ruthless humor" and "teasing." Plaintiff was the only black permanent employee working as a mechanic in defendant's St. Louis branch. No complaint was made about the racial slurs, as plaintiff had been directed to lodge any complaints to his immediate supervisor who was the source of many of such statements. Plaintiff acknowledges that he had sometimes referred to himself in self-disparaging terms but claims he did this out of self-consciousness and being the lone member of his race to face the crude humor of his fellow employees and supervisor. More often than not, the racial comments were not intended to be funny but were somewhat threatening and clearly demeaning.[1]

Plaintiff was terminated from his employment on January 19, 1988. The reasons offered for his termination—all racially neutral—were: poor physical condition, poor record of availability for duty, least experience as a qualified elevator mechanic outside of service work, lack of technological skills, complaints from customers requiring returns to the work site to correct work performed.

Plaintiff was replaced by a white male who, from the credible evidence, was groomed to pass the elevator mechanic's examination so that he could replace plaintiff.[2]

While defendant's articulated reasons for plaintiff's layoff are facially legitimate and non-discriminatory, there is substantial evidence for finding that such reasons are merely pretextual and that the motivating

---

1. For example: "Why do your people live like animals? Why do your people urinate in the halls?; you have a white man's job; your 'kind' aren't allowed in South St. Louis County after dark."

2. A conflict exists in the testimony. Two supervisory employees of defendant insisted that the replacement was not specially primed to take plaintiff's position. A former employee testified otherwise.

factor in the decision to terminate plaintiff was because of his race.

Defendant asserts that plaintiff lost his job because there were frequent customer call backs to repair what plaintiff had already repaired, plaintiff was physically unable to do his work and defendant needed a more seasoned mechanic. The facts speak otherwise. For example, in spite of his physical problems, there is scant evidence that he could not perform his work, or that there were customer complaints or that his replacement was a more seasoned mechanic—in fact, the evidence is just the opposite because plaintiff's replacement had not worked as a service mechanic.

Most telling against defendant's position is the evidence regarding customer call backs for work inadequately performed. There were indeed many call backs, but not because of plaintiff's work. The call backs were as a result of plaintiff's replacement's work and inadequate performance.

Plaintiff's rate of pay at the time of his termination was $19.43 per hour. In 1987, he earned $40,128 from defendant. In 1988, plaintiff's replacement earned $45,-209.13 working for defendant on the St. Louis Housing Authority route.

### Conclusions of Law

The parties agree on the applicable law and essentially cite the same cases and, at least, the same propositions of law.

The plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). He must prove that he is a "member of a protected class, and that an adverse employment action was taken against the plaintiff in circumstances from which an inference of unlawful discrimination arises." *Johnson v. Legal Serv.,* 813 F.2d 893, 896 (8th Cir.1987). If the plaintiff succeeds in making a prima facie case, it is then the defendant's burden to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

If the defendant establishes a legitimate and non-discriminatory reason for the required layoff, the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff on the basis of race remains with the plaintiff, and the plaintiff must show that the articulated reason was mere pretext. *Johnson,* 813 F.2d at 896; *Wallace v. University of Missouri,* 624 F.Supp. 560, 564 (E.D.Mo.), *aff'd,* 802 F.2d 465 (8th Cir. 1986). Likewise, even if the plaintiff succeeds in persuading the trier of fact that the articulated reason was mere pretext, the defendant may avoid liability by showing by a preponderance of the evidence that the same decision would be reached absent any consideration of plaintiff's protected class. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 1792, 104 L.Ed.2d 268 (1989); *Gray v. University of Arkansas,* 883 F.2d 1394, 1398 (8th Cir. 1989).

■ Fitting the facts of this case to the law set forth, the Court finds from the credible evidence that plaintiff has proved by a preponderance of the evidence that his termination was due to defendant's unlawful consideration of his race.

Plaintiff was a member of a protected class and was replaced by a white employee with substantially less service time and, according to the evidence, with no greater and, probably, inferior skills, as evidenced by call backs for follow-up work due to the replacement's failings, not plaintiff's.

Although defendant offered what facially appear to be legitimate reasons for plaintiff's layoff, the Court finds for the most part such reasons were mere pretext to be rid of plaintiff because of his race. There were no warnings given to plaintiff of any dissatisfaction with his work for any reason nor any showing of discontent with his work.

The credible evidence reveals that defendant had pre-selected a white male to take plaintiff's position without regard to its customers' apparent satisfaction with plaintiff's job performance or his satisfactory work accomplishments.

The overall atmosphere of egregious racial animus in the workplace, supported and contributed to by plaintiff's immediate supervisor and justified by higher authority with lame excuses, bodes badly for defendant's argument that race was not a motivating factor in its employment decisions. The Court concludes that race was the motivating factor for plaintiff's termination. Furthermore, defendant has failed to prove that even absent unlawful consideration of plaintiff's race, it would have chosen to replace him with the white male who did succeed him.

Having prevailed, plaintiff is entitled to back pay and other equitable relief. Plaintiff is obligated to prove the gross amount of backpay and benefits as a result of the discrimination, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 574 (8th Cir. 1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983), but exactness of damages is not required. *Wells v. Meyer's Bakery*, 561 F.2d 1268, 1272–73 (8th Cir.1977).

Plaintiff's entitlement to a full measure of relief includes, but is not limited to, back pay "measured from the date of discharge to the date of entry of judgment," *Packard–Knutson v. Mutual Life Ins. Co.*, 668 F.Supp. 1261, 1267 (N.D.Iowa 1987), and "any increases [he] would have received within that period ... [and] any fringe benefits [he] would have received had [he] remained employed," *Paxton*, 688 F.2d at 574, and appropriate injunctive relief. In addition to back pay, plaintiff is entitled to pre-judgment interest under Title VII. *Washington v. Kroger Co.*, 671 F.2d 1072, 1078 (8th Cir.1982).

Plaintiff will be awarded lost wages through the date of judgment, plus prejudgment interest, and defendant is ordered to reinstate plaintiff and to make contributions to plaintiff's pension as though plaintiff had been continuously employed since January 1988. Plaintiff shall provide the Court with a proposed calculation of backpay for the period January 19, 1988 (date of termination) to December 17, 1991 (date of judgment) and prejudgment interest within 15 days of this order.

Plaintiff, as the prevailing party, is entitled to his attorneys' fees and costs of litigation pursuant to Title VII. 42 U.S.C. § 2000e–5(k).

## JUDGMENT

Findings of fact and conclusions of law dated this day are hereby incorporated into and made a part of this judgment.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff recover from defendant lost wages through the date of judgment, plus prejudgment interest, that defendant reinstate plaintiff and make contributions to plaintiff's pension as though plaintiff had been continuously employed since January 1988 and that plaintiff, as prevailing party, is entitled to his attorney's fees and costs of litigation.

IT IS FURTHER ORDERED that plaintiff shall provide the Court with a proposed calculation of lost wages, through the date of judgment, and prejudgment interest within fifteen (15) days of the date herein.

IT IS FURTHER ORDERED that plaintiff's Motions to Stay Entry of Judgment, Vacate the Court's Orders of November 2, 1989, 723 F.Supp. 1344 (E.D.Mo.) and August 14, 1991, to Reinstate Count II of his Complaint, for Leave to Amend and to Set All Counts for Jury Trial shall be and they are denied.